

# Christopher & Banks

March 20, 2008

George Burnett
LIEBMANN, CONWAY,
 OLEJNICZAK & JERRY, S.C.
231 South Adams Street
Green Bay, Wisconsin 54301

Re: Ralph C. Neal
 Christopher & Banks, Inc. Comprehensive Major Medical Plan

Dear Mr. Burnett:

This letter resolves Mr. Neal's appeal of the denial of multiple claims for benefits under the Christopher & Banks, Inc. Comprehensive Major Medical Plan ("the Plan") relating to Mr. Neal's combined liver and kidney transplant surgery on or about April 7, 2006, as raised by your correspondence beginning September 19, 2007.

According to information provided by the contract administrator, transplant-related claims with dates of service April 5, 2006-October 29, 2007 were denied post-service from April 25, 2006-November 13, 2007. The billed charges on these transplant-related denied claims total $518,388.20 (which includes $400 deductible). A spreadsheet is enclosed for your reference. During the same period, the Plan paid $108,598.63 for non-transplant-related items for Mr. Neal.

**Mr. Neal's Appeal Is Untimely, In Significant Part, And Timely, In Part**

As explained in Coventry's December 3, 2007 letter to you, under the terms of the Plan (see p. 64 of the enclosed Plan), if Mr. Neal desired to appeal the denial of a claim after receiving service, he would have to submit an appeal within 180 days of receipt of the notice of claim denial. Because, as your November 26, 2007 letter to Coventry requests, we are treating the current appeal as having been requested on September 19, 2007, the date of your first letter, the current appeal is timely with respect to post-service claim denials received by Mr. Neal within 180 days before September 19, 2007. In other words, the appeal raised by your September 19, 2007 letter is **timely** with respect to claim denials received by Mr. Neal on or after March 23, 2007. The enclosed spreadsheets of claims includes the date of claim processing. Because there is a small gap between the date a claim is processed, and the date a claim denial would be received by Mr. Neal, which triggers the 180-day period, **we are treating as timely within the 180-day period all claims denied that were processed on or after March 14, 2007** (see the bottom portion of page 14 through page 19 on the enclosed spreadsheet), which provides 9 days for mailing etc. beyond the 180 days.

Conversely, with the exception of appeals submitted on May 20, 2006 and March 9, 2007 relating to ambulance and transport services in early May, 2006 (with charges totaling $14,104.55), the current appeal is untimely with respect to all claims that were denied for transplant-related services received on or about April 7, 2006 and thereafter, which were processed during the period April 25, 2006-March 1, 2007 (see spreadsheets pages 1-14).

2400 Xenium Lane North, Plymouth, MN 55441
(763) 551-5000 • Fax (763) 551-5198
www.christopherandbanks.com

CB 000001

Exhibit A

As the Plan states (p. 64), "[r]equests for appeal which do not comply with these procedures [here the 180-day deadline] will not be considered, except in extraordinary circumstances." Consistent with the plan administrator's obligation to the terms of the Plan, we are hereby denying as untimely the current attempted appeal of the denials of transplant-related services that were processed during the period April 25, 2006-March 1, 2007 (with the exception of the earlier ambulance appeals noted above). In accordance with the Plan, you are allowed to present evidence why the appeal should not be rejected as untimely.

### Mr. Neal's Transplant and Transplant-Related Services Are Not Covered By the Plan

As explained below, we are also separately rejecting the current attempted appeal of the denials of transplant-related services that were processed during the period April 25, 2006-March 1, 2007 (the untimely appeal)) or during the period March 14, 2007-November 13, 2007 (the timely appeal), because all of these transplant and transplant-related services are not otherwise covered by the terms of the Plan. We determined it was appropriate to address and reject the untimely portion of the appeal on the separate and independent ground that the transplant and transplant-related services are not otherwise covered by the terms of the Plan, given the existence of the timely portion of the appeal and the shared or related reasons why all of the subject transplant and transplant-related services are not covered by the terms of the Plan.

In reaching our independent conclusion, we considered the information you submitted, file materials from the contract administrator, as well as a number of other items. We consulted orally with the health care professional to whom the combined liver and kidney transplant was submitted in the Spring of 2006 for certification (pre-authorization review), specifically Dr. Floyd Shewmake, and received from him five pages of medical guidelines for adult liver transplant (a copy of these guidelines is enclosed). We reviewed the written consult report prepared by David K. Imagawa, M.D., dated February 22, 2008, reflecting his independent review (copy enclosed). Dr. Imagawa's report referenced a publication of the National Institute On Alcohol Abuse and Alcoholism, entitled Liver Transplantation for Alcoholic Liver Disease, which we obtained and reviewed. We also reviewed an article in the journal Liver Transplantation entitled Meta-Analysis of Risk For Relapse to Substance Abuse After Transplantation of the Liver or Other Solid Organs, which was published in February 2008 (copy enclosed). We reviewed recognized patient selection criteria for liver transplant for alcoholic patients, as reflected in the above items and others, including, for example, the March 21, 2006 letter to First Health from University of Wisconsin Dr. D'Alessandro (copy enclosed).

Based on our review and assessment of information, and our review of the terms of the Plan, we have independently determined that the transplant and transplant-related services at issue are not covered by the terms of the Plan because they are not medically necessary, as defined in the Plan. The Plan makes clear in the discussion of the First Health National Transplant Program on p. 29, more generally on p. 33 in the discussion of General Information About Your Health Benefits, and on p. 43, entitled Medical Expenses Not Covered, that only medically necessary services, supplies and treatment are covered, as defined in the Plan. Medically necessary, in turn, is defined on p. 76 of the Plan. The Plan's multi-part definition specifies that a "treatment, procedure, service or supply must meet all of the criteria listed above to be

CB 000002

Case 1:08-cv-00464-WCG    Filed 01/20/09    Page 2 of 4    Document 20-2

considered medically necessary and to be eligible for coverage under this plan." We have concluded that the combined liver and kidney transplant performed on Mr. Neal, and the follow-up care and treatment for that transplant, do not meet the following portion of the Plan's definition of medically necessary:

> Medically necessary services and/or supplies the plan administrator determines, in the exercise of its discretion, to be:
>
> (4). Consistent in type, frequency and duration of treatment with scientifically-based guidelines of national medical research, professional medical specialty organizations or governmental agencies that are accepted by the plan.

Mr. Neal's transplantation was and is inconsistent with well-recognized scientific and medical guidelines for liver transplant in alcoholic patients, which are accepted by the Plan. The liver transplant guidelines utilized by Dr. Shewmake in 2006 specify that an indication for transplant is no alcohol for at least six months prior to transplant. Dr. Shewmake also informed us that he has not deviated from this guideline in other cases. When Mr. Neal was hospitalized in advance of the transplant, it was noted that he had intermittently continued to use alcohol since he was discovered to have cirrhosis approximately a year ago, with his last usage claimed to be approximately six weeks before the admission that resulted in transplant. The 6-month pre-transplant abstinence guideline is also the "normal abstinence period" required by the University of Wisconsin, where the transplant was performed (see Dr. D'Alessandro's March 21, 2006 letter). The February 2008 article in Liver Transplantation makes clear that there is widespread use of the 6-month guideline. Page 168 of the article notes that "transplant programs strive to apply the '6-month rule' as a key criterion for patient selection." Given the widespread recognition of the 6-month guideline in the national transplant research community, that guideline will continue to be accepted and applied by the Plan.

Mr. Neal's transplantation with only six weeks of pre-admission claimed abstinence is also not covered under the Plan because such transplantation is investigational or experimental as defined in the Plan (p. 75). Specifically, the effectiveness of such transplant is unproven based on clinical evidence reported in peer-reviewed medical literature. There is a lack of consensus in the medical research community that transplantation with such limited pre-transplant abstinence is indicated. We recognize that there are physicians on both sides of this issue, as reported in the National Institute article, but this division, together with the 6-month guideline, demonstrates the unproven nature of transplants with limited pre-transplant abstinence.

In addition to Mr. Neal's failure to satisfy the Plan's definition of medically necessary, the portion of his claims that might be regarded as claims for post-transplant complications are not covered because the Plan specifies on p. 43 that it does not cover "[c]omplications arising from any non-covered surgery or treatment . . ."

**Conclusion**

Because the Plan is a self-insured group health plan subject to the Employee Retirement Income Security Act ("ERISA"), Mr. Neal has a right to bring a civil action for benefits under 29 U.S.C. § 1132. Information about ERISA is available from the U.S. Department of Labor. To the extent not provided with this letter, Mr. Neal can receive free of charge a copy of all relevant documents from the plan or contract administrator.

Very truly yours,

Harold Sassaman
Vice President of Human Resources
Acting on behalf of
Christopher & Banks, Inc.
as Plan Administrator

Very truly yours,

Mary Madison
Manager, Total Rewards
Acting on behalf of
Christopher & Banks, Inc.
as Plan Administrator

CB 000004

Case 1:08-cv-00464-WCG    Filed 01/20/09    Page 4 of 4    Document 20-2