UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RALPH C. NEAL, | Civil Action No. 08-C-0464 |
| Plaintiff, | Judge: William C. Greisbach |
| v. | |
| CHRISTOPHER & BANKS COMPREHENSIVE MAJOR MEDICAL PLAN, CHRISTOPHER & BANKS GROUP DISABILITY INCOME INSURANCE PLAN, and CHRISTOPHER & BANKS, INC. | **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## INTRODUCTION

The Plan's denial of Plaintiff's claim for medical benefits as both untimely and inconsistent with the Plan's definition of "medically necessary" was reasonable. As demonstrated in Defendants' opening and response briefs, the Plan's decision must be upheld.

Once again, Mr. Neal spends the majority of his brief alleging procedural errors in the claims process and arguing that this Court should not defer to Christopher & Banks' well-reasoned decision denying his appeal because of these alleged errors. Because he cannot demonstrate any prejudice he actually suffered as a result of these alleged errors, and because the Plan in any event substantially complied with the applicable procedures, these arguments should carry no weight. Moreover, because the Plan gives Christopher

& Banks the discretionary authority to determine eligibility for plan benefits and construe the terms of the Plan, and because Christopher & Banks actually and reasonably exercised this discretion in denying Mr. Neal's final appeal, Christopher & Banks' decision is entitled to deference and must be upheld regardless of any earlier procedural irregularities.

Pausing only briefly to consider the merits of Christopher & Banks' decision, Mr. Neal repeats that the Plan's decision to deny his claim for benefits was "wrong" because he believes the Plan should have disregarded the six-month abstinence guideline when considering his claim, and because the guideline is not, in his estimation, sufficiently "medical." Finally, he asserts that the Plan's interpretation of "medically necessary" was "wrong." To the contrary, the Plan's interpretation of "medically necessary" and the Plan's decision to deny his claim for benefits were not wrong. And to prevail, Mr. Neal must show much more than that the Plan was wrong. He must show that Christopher & Banks "not only made the wrong call, but that [it] made a 'downright unreasonable' one." *Chojnacki v. Georgia Pacific Corp.*, 108 F.3d 810, 816 (7th Cir. 1997) (quoting *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990)). This he simply cannot do. Defendants' motion for summary judgment should be granted.

### A. No Heightened Standard of Review is Appropriate.

Mr. Neal maintains that his claim is entitled to a heightened standard of review because of alleged flaws in the claims process. To his list of procedural flaws, he adds — incorrectly — an assertion that the final appeal letter was late. Citing cases from other jurisdictions, he maintains that this Court should reject the substantial compliance
2

doctrine. He fails to acknowledge that to do so would be directly contrary to controlling Seventh Circuit precedents that consistently rely on the substantial compliance doctrine. He also asserts that the Court should engage in a more searching review because Christopher & Banks permitted Mr. Neal to continue to participate in the Plan after he left the company, and because, in addition to serving as Plan Administrator, Christopher & Banks contributes to the Plan, along with the Plan participants. These arguments do not withstand scrutiny.

First, Mr. Neal incorrectly suggests that the substantial compliance doctrine has been abolished. In fact, as this Court has recognized,[1] the Seventh Circuit continues to recognize and apply the doctrine. *See, e.g.*, *Tate v. Long Term Disability Plan for Salaried Employees of Champion Intern. Corp.*, 545 F.3d 555, 561 (7th Cir. 2008); Williams v. Aetna Life Ins. Co., 509 F.3d 317, 324 (7th Cir. 2007); *Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 627-28 (7th Cir. 2005); *Militello v.*

---

[1] *O'Connell v. Northland Lutheran Retirement Comm.*, No. 07-C-637, 2008 WL 2782897, at *6 (E.D. Wis. July 15, 2008) (Griesbach, J.). Mr. Neal relies on cases from other jurisdictions in support of his argument that the substantial compliance doctrine has been abolished: *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222-23 (2d Cir. 2006); *Reeves v. Unum Life Ins. Co. of America*, 376 F. Supp. 2d 1285, 1294 (W.D. Okla. 2005); *Linder v. BKY-Chemie USA Inc.*, 313 F. Supp. 2d 88, 94 (D. Conn. 2004). Not only are these cases contrary to controlling Seventh Circuit precedents, but they merely address under what circumstances a claim will be deemed exhausted in light of procedural irregularities. In the Seventh Circuit, it is also well established that "deemed exhausted" benefits determinations are nevertheless entitled to deference where, as here, the claimant does not file suit until after the Plan renders its decision. (Defendants' Response Brief, at 4-6.) Further, because Mr. Neal seeks to appeal a denial of benefits, the proper remedy, if the Court were to conclude that Christopher & Banks did not render a decision (which it did) and there was not adequate compliance (which there was), would be to remand his claim and require the Plan Administrator to correct the procedural irregularities, resume the appeal, and exercise its discretion in making the benefits determination. (*Id*. at 14 n.4.)

*Central States, Southeast and Southwest Areas Pension Fund*, 360 F.3d 681, 687 n.4 (7th Cir. 2004); *Hackett v. Xerox Corp. Long Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003) (citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir .1992)).

Second, citing the Supreme Court's recent decision in *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008), Mr. Neal argues that in conducting its deferential review the Court should nevertheless more closely scrutinize Christopher & Banks' decision because in addition to serving as Plan Administrator Christopher & Banks contributes to the Plan, and because Mr. Neal was not an employee at the time of his surgery.

In *Metropolitan Life*, the Supreme Court recognized that the existence of a conflict is one factor to consider in evaluating whether a plan administrator abused its discretion in cases where the plan administrator both funds the plan and evaluates benefits claims. *Id.* at 2348. In such a circumstance, the Court reasoned, "every dollar provided in benefits is a dollar spent by the employer; and every dollar saved ... is a dollar in [the employer's] pocket." *Id.* (quoting *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 144 (3d Cir. 1987)).

Following the *Metropolitan Life* analysis, however, because the Plan is funded through both employer and covered-individual contributions, and because Christopher & Banks took active steps to reduce any potential bias, these concerns are immaterial. *Metropolitan Life*, 128 S.Ct., at 2351; *see, e.g.*, *Carr v. Gates Health Care Plan*, 195 F.3d 292, 296 (1999). Funding for the Plan is shared by Christopher & Banks and covered individuals, so there is no similar dollar-for-dollar motive to deny benefits. (*See, e.g.*, Salvo Decl. Ex., B, at CB 00003; Plan at 15.) Further, Christopher & Banks took active

4

steps to reduce any potential bias and to promote accurate benefits determinations. *See Metropolitan Life*, 128 S.Ct., at 2351. For example, Christopher & Banks delegated initial claims processing to a third-party administrator, Coventry, which would not have known Mr. Neal's employment status in the processing of claims. (Defendants' Proposed Finding of Fact ("DPFF") ¶ 3; Salvo Decl., Ex. B, at CB 000087 & 000097; Plan at 79 & 89.) Also, in addition to consulting with Coventry's Medical Director during the appeal process, Christopher & Banks sought the advice of an outside expert, Dr. Imagawa, who performed an outside independent review and recommended that Mr. Neal's transplant- and transplant-related services were not covered by the Plan. (DPFF ¶¶ 39-44; Salvo Decl., Ex. E., at CB 000123-25; Salvo Decl., Ex. I, at CB 000305-08.) *See, e.g.*, *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 608 (7th Cir. 2007) (consulting with independent expert is evidence of appropriate deliberative process); *Carr v. Gates Health Care Plan*, 195 F.3d 292, 296 (1999) (same). Dr. Imagawa's report demonstrates his independence in detail, noting that his compensation was not dependent, in any way, on the conclusion he reached and that he had no other conflict arising from any relationship with Coventry, Christopher & Banks, or Mr. Neal's doctors. (Salvo Decl., Ex. E., at 124-25.)

Finally, none of the other conflict indicia identified by the Court in *Metropolitan Life* are present. For example, there is no evidence that Christopher & Banks or Coventry has a history of biased claims administration or that they were influenced in evaluating Mr. Neal's claims by any bias. *See Metropolitan Life*, 128 S.Ct., at 2351. In fact, Christopher & Banks and Coventry took additional, voluntary steps to accommodate Mr. Neal on more than one occasion. For example, Christopher & Banks approved a Plan

exception permitting Mr. Neal to see an out-of-network provider for a surgical consult. (Plaintiff's Proposed Finding of Fact ("PPFF") ¶ 9.) Coventry then reached out to Mr. Neal's surgeon following the non-certification decision, inviting a peer-to-peer discussion between the surgeon and Coventry's Medical Director. (Defendants' Additional Proposed Findings of Fact ("Defs. Add'l Proposed Facts") ¶¶ 3-6; Salvo Decl., Ex. J., at CB 0164-65.) And, as discussed below, once Mr. Neal brought his appeal, Christopher & Banks and Coventry agreed to hold the appeal in abeyance while Mr. Neal's attorneys sought additional medical records. There is no evidence that Mr. Neal received anything but full, fair consideration of his claims for benefits.

Third, Mr. Neal complains for the first time that the Plan's final appeal letter was late. He suggests that Coventry should have submitted Mr. Neal's appeal to the independent medical examiner before it received additional medical records from Mr. Neal's attorneys and that Christopher & Banks should have spent 30 days rather than 60 considering his appeal. (Plaintiff's Response Brief, at 4-5 & n.1.) This argument not only fails as a matter of law and fact, but it directly contradicts the requests and actions of Mr. Neal's attorneys during the appeals process.

Mr. Neal now argues that the Plan should not have waited to consider his appeal until it received all of Mr. Neal's medical records. (Plaintiff's Response Brief, at 4 n.1.) At the time of the appeal, however, as memorialized in a November 26, 2007 letter to Coventry from Mr. Neal's attorney George Burnett, Esq., Mr. Neal asked the Plan through his attorneys to "hold the appeal request open until the balance of Mr. Neal's medical treatment information could be provided." (Salvo Decl., Ex. P, at CB 0300). At

6

the time of the appeal, Mr. Burnett asked Coventry, "Please confirm that this appeal is being held by you in abeyance until we can submit the additional medical treatment information applicable to Mr. Neal's treatment." *Id.* The Plan agreed to do so: "Please note that once clinical records are received, the appeal will be re-opened based on the date this information is received and will be reviewed taking into consideration all clinical records, the Plan document and all other pertinent information available." (Salvo Decl., Ex. Q, at CB 0302).

Mr. Neal also now argues that the Plan should have processed his appeal pursuant to the 30 day expedited schedule for "pre-service claim" appeals, despite the fact that he waited for over a year after his surgery to bring his appeal. Coventry's initial response, in fact, when it received Mr. Neal's appeal of the clinical non-certification was that the non-certification was beside the point because Mr. Neal had already undergone the transplant surgery. (DPFF ¶ 31; Salvo Decl., Ex. N, at CB 0296-97.) This prompted Mr. Neal's attorneys to write on October 31, 2007 to change his appeal from an appeal of the clinical non-certification to a denial-of-benefits appeal. (DPFF ¶¶ 34 & 35; Salvo Decl., Ex. N, at CB 0296.) Therefore, Christopher & Banks had 60 days from January 23, 2008 to render its decision, which it did on March 20, 2008. Its decision was timely.

Mr. Neal recognizes this argument to be a red herring — "Mr. Neal does not claim, of course, that Christopher & Banks' failure to process his appeal in a timely manner automatically entitles him to the benefits he seeks." (Plaintiff's Response Brief, at 5.) Nor in fact would a tardy appeal letter affect the standard of review. Mr. Neal participated in the appeal process, and only after the Plan exercised its discretion and he

7

received the Plan's decision did he commence the present action. (Defs. Add'l Proposed Facts, ¶ 2; *compare* Salvo Decl., Ex. A, *with* Complaint.) Because as a matter of undisputed procedural fact the Plan exercised its discretion, the Plan's exercise of discretion is entitled to deference. (Defendants' Response Brief, at 4-6.)

### B. Christopher & Banks' Determination that a Significant Part of Mr. Neal's Appeal Was Untimely Was Not Arbitrary and Capricious.

Mr. Neal does not dispute that he was aware of the 180-day deadline for bringing his appeal. He recognizes in his brief, in fact, that "the Review Notification did inform Mr. Neal that he had the right to appeal (and a deadline of 180 days to do so)." (Plaintiff's Opening Brief, at 11.)

As in his opening brief, Mr. Neal attempts to re-frame his failure to request an appeal within 180 days as a question of whether he failed to exhaust his administrative remedies. While it is true that Mr. Neal was required to exhaust his administrative remedies, the issue for the Court to decide remains whether the Plan's decision to deny his appeal in significant part as untimely was "arbitrary and capricious." And there is no dispute that he failed — as Christopher & Banks found — to file his appeal within 180 days.

When Mr. Neal eventually brought his untimely appeal, Christopher & Banks' appeal denial letter invited him to "present evidence why the appeal should not be rejected as untimely." (Defs. Add'l Proposed Facts, ¶ 12; Salvo Decl., Ex. A, at CB 00002.) Mr. Neal said nothing in response to this invitation, but now makes a series of erroneous hyper-technical arguments in an attempt to obscure both his tardiness and the

fairness of the administrative process. As demonstrated in Defendants' opening and response briefs, under the "arbitrary and capricious" standard, Mr. Neal cannot now dispute that Christopher & Banks properly determined that a significant portion of his appeal was untimely.

### C. Christopher & Banks' Determination that Mr. Neal's Transplant and Transplant-Related Services Are Not Covered By the Plan Was Not Arbitrary and Capricious.

Mr. Neal asserts that the six-month abstinence guideline is arbitrary and that it has no basis in the Plan. He argues that the Plan's decision to deny his claims for benefits was "wrong" because he believes the Plan should have disregarded the six-month abstinence guideline when considering his claim. He also argues that the guideline is not, in his estimation, sufficiently "medical." Finally, he asserts that the Plan's interpretation of "medically necessary" was "wrong." To the contrary, the Plan's determination was reasonable and must be upheld. Even if the Court were to apply a more searching standard of review, Mr. Neal provides no basis to overturn Christopher & Banks' careful, well-reasoned determination.

Under ERISA, a plan administrator has an obligation to ensure that plan provisions are being applied consistently with respect to similarly situated claimants. At bottom, this is a case of the similarly situated being treated similarly. Before Mr. Neal, Coventry had consistently applied the six-month guideline, declining to deviate in other cases. (DPFF ¶ 59; Salvo Decl., Ex. A, at CB 000003.) Christopher & Banks appropriately considered the guideline, Coventry's consistent application of the

9

guideline, academic criticism of the guideline, Dr. D'Alessandro's letter requesting pre-certification, and Dr. Imagawa's report concluding that the transplant was inconsistent with the Plan definition of "medically necessary."

Mr. Neal asserts that the "central fact in this case" is that Mr. Neal would have died without the transplant, but he fails to acknowledge that this circumstance is virtually inherent in the guideline that is widely adhered to by transplant centers.[2] Moreover, this guideline has been consistently applied by the Plan's claims administrator. While this concern may have caused the University of Wisconsin Hospital to deviate from its normal guideline, the suggestion that deviation by Christopher & Banks from the would be akin to granting a routine extension of time in civil litigation completely misses both the primacy of plan language in ERISA cases (*see* 29 U.S.C. § 1104(a)(1)(D)) and the need for ERISA plans to treat like cases alike. Further, Mr. Neal also ignores Dr. Imagawa's observation that even if Dr. Imagawa were to abandon the six-month guideline in favor of the more flexible approaches proposed by the guideline's critics, he nevertheless would not have recommended Mr. Neal for the transplant procedure in light of his clinical history. (DPFF ¶ 43; Salvo Decl., Ex. E, at CB 0000123-24.)

---

[2] Rather than setting forth specific proposed findings of fact with proper citations to the administrative record in support of this argument as required by Local Rule 56.2(b), Mr. Neal cites the website "Wikipedia.org" for purported medical evidence in support of this "central fact." This information is outside the record, and Wikipedia is not a scholarly treatise or otherwise sufficiently reliable source. *See, e.g.*, *Badasa v. Mukasey*, 540 F.3d 909, 910-11 (8th Cir. 2008) (reversing an agency decision because it cited Wikipedia). For the purposes of summary judgment, the Court should disregard these unsupported facts. Fed. R. Civ. P. 56; Local Rule 56.2; *see Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir.1994).

Mr. Neal's remaining arguments (but not his off-point analogies) are addressed in full in Defendants' response brief, which Defendants incorporate herein by reference. But it is worth repeating here that the six-month guideline is undoubtedly medical, not simply ethical in some isolated sense. There is a demonstrated association between post-transplantation relapse and a pretransplantation duration of abstinence of six months or less, which is likely understated because of use of the six-month guideline by transplant programs. (Defs. Add'l Proposed Facts, ¶ 15-16; DPFF ¶ 61; Salvo Decl., Ex. G, at CB 00136 & 00145.) In short, Defendants' motion for summary judgment should be granted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgment.

Dated: March 6, 2009                    DORSEY & WHITNEY LLP

By s/Glenn M. Salvo
Glenn M. Salvo #1046178
Timothy E. Branson #0174713 MN
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

*Attorneys for Defendants Christopher & Banks Comprehensive Major Medical Plan, Christopher & Banks Group Disability Income Insurance Plan, and Christopher & Banks, Inc.*