UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RALPH C. NEAL,
4622 Osage Court
Green Bay, WI 54313,

       Plaintiff,

   -vs-

CHRISTOPHER & BANKS
COMPREHENSIVE MAJOR MEDICAL PLAN,
2400 Xenium Lane North
Plymouth, MN 55441,

CHRISTOPHER & BANKS
GROUP DISABILITY INCOME INSURANCE PLAN,
2400 Xenium Lane North
Plymouth, MN 55441,

and

CHRISTOPHER & BANKS, INC.,
2400 Xenium Lane North
Plymouth, MN 55441,

       Defendants.

Civil Action No. 08-C-0464

Judge: William C. Griesbach

---

## PLAINTIFF RALPH C. NEAL'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Plaintiff Ralph C. Neal, by and through his undersigned attorneys, submits the following reply in support of his motion for summary judgment. This case presents the question of whether an ERISA plan can refuse to cover a liver transplant that a critically-ill man needs to live, based on an absolute rule that appears nowhere in the plan and that the plan's own medical literature calls "arbitrary." Because the answer to that question is "no," Mr. Neal's motion for summary judgment should be granted, and Defendants' motion for summary judgment denied.

## BACKGROUND

This ERISA case stems from the denial of coverage for a combined liver-kidney transplant by Defendants, the Christopher & Banks Comprehensive Major Medical Plan and its administrator, Christopher & Banks, Inc. Defendants refused to cover the transplant on grounds that Mr. Neal's appeal of the initial denial was untimely. Defendants also determined that the transplant was experimental and not medically necessary, based on the fact that Mr. Neal had less than six months of pretransplantation abstinence from alcohol. Having so determined, Defendants also denied numerous claims for posttransplantation care on grounds that the Plan does not cover complications arising from non-covered surgery. Both parties have moved for summary judgment.

## ARGUMENT

As a first line of defense, Defendants have asserted that Mr. Neal's claims are barred because he failed to exhaust his administrative remedies in a timely manner. However, because Defendants failed to follow proper procedures under ERISA and its implementing regulations in denying Mr. Neal's claims, they may not assert this defense. The Review Notifications sent by Defendants' third-party contract administrator, First Health,[1] lacked at least four[2] of the five elements that 29 C.F.R. § 2560-503-1(g)(1)(i)-(v) requires a notification of adverse benefit

---

[1] Now known as Coventry.

[2] Defendants claim that they complied with 29 C.F.R. § 2560.503-1(g)(1)(iv) because First Health's Review Notifications included two additional pages entitled "Information on the Appeal Process" that were not part of the documents Defendants originally designated as the administrative record. (Docket #27 at FH 000150-151.) Counsel for Mr. Neal agrees that these pages would satisfy subsection (g)(1)(iv), meaning that First Health would have omitted only four of the five required elements from its Review Notifications, rather than all five. However, counsel strongly rejects any implication that his earlier position was "calculated gamesmanship" or unsupported by the evidence. (Docket #28 at 10.) Counsel's knowledge of the case comes almost entirely from the documents produced by Defendants. Responsibility for any confusion on the point lies with Defendants, not Mr. Neal. Cf. Barhan v. Ry-Ron, Inc., 121 F.3d 198, 201 (5th Cir. 1997) ("It is the plan administrator's responsibility to compile a record that he is satisfied is sufficient for his decision.").

determination to include. (Docket #23 at 8-12.) Furthermore, Christopher & Banks' letter denying Mr. Neal's appeal as untimely was itself untimely. (Docket #32 at 4-5.)

Defendants contend that they provided Mr. Neal with "[t]he specific reason or reasons for the adverse determination," 29 C.F.R. § 3560.503-1(g)(1)(i), "r]eference to the specific plan provisions on which the determination is based," 29 C.F.R. § 3560.503-1(g)(1)(ii), and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary," 29 C.F.R. § 3560.503-1(g)(1)(iii), because First Health's Review Notification included the following spectacularly unhelpful paragraph:

> Treatments, procedures, services or supplies, as determined by the Plan Administrator [sic] are expected to be of clear clinical benefit to the patient, appropriate for the care and treatment of the injury or illness and conform [sic] to the standards of good medical practice as supported by the applicable medical and scientific literature. Our review has determined the services to not be medically necessary. Therefore, we are unable to recommend certification of the proposed services as medically necessary, as defined under your plan because: The medical necessity of the planned/proposed services is not supported by the medical information available to us.

(0178.) If this qualifies as "specific," then word specific has lost all meaning. The inadequacy of First Health's Review Notification may be seen by contrasting it with the following hypothetical paragraph:

> Page 32 of your Plan states that transplant services are not covered if they are *investigational/experimental* or not *medically necessary*. Page 76 of your Plan states that in order to meet these requirements, a transplant must be consistent in type, frequency and duration with scientifically-based guidelines of national medical research, professional medical specialty organizations or governmental agencies that are accepted by the plan, and of demonstrated value based on clinical evidence reported by peer reviewed medical literature and by generally recognized academic experts. The Plan Administrator has determined that some national transplant programs will not perform transplants on patients with less than six months' pretransplantation abstinence from alcohol. Because you have less than six months' pretransplantation abstinence, your transplant is not consistent with the guidelines of these national transplant programs. Thus, it is not medically necessary, and will not be covered. If you believe we have erred in this determination, please provide us with information indicating that you do in fact have six months' pretransplantation abstinence.

3

A single paragraph like this would have satisfied 29 C.F.R. § 2560.503-1(g)(1)(i)-(iii). It would have allowed Mr. Neal to understand why First Health would not cover his transplant, and to evaluate his options on appeal. Instead, First Health gave Mr. Neal only a vague and tautological explanation for its puzzling determination that lifesaving medical care was not "medically necessary."

Defendants also claim that First Health complied with 29 C.F.R. § 2560.503-1(g)(1)(v)(B), which states that a notification of adverse benefit determination must include

> either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request,

by including in the Review Notification a statement that "[t]he clinical rationale used in making this decision is available in writing upon request." (0179.) Defendants claim that because First Health included this statement, it did not need to comply with 29 C.F.R. § 2560.503-1(g)(1)(v)(A), which requires a plan that denies a claim because of an internal policy to state that it has done so and to make a copy of the internal policy available to the claimant. But subsection (g)(1)(v)(B) does not apply here, because Dr. Shewmake did not make any "scientific or clinical judgment" when he denied coverage for Mr. Neal's transplant. He simply applied an internal policy, specifically, an arbitrary, absolute six-month rule. (0003; 0119.) Dr. D'Alessandro understood that First Health's denial was based on an internal policy, not a clinical judgment. He informed First Health that he would not be doing a peer-to-peer "because if the non-cert was based on policy then he would not waste his time." (0165.) More importantly, First Health itself understood that its denial was based on an internal policy, not a clinical judgment. In response to Mr. Neal's request for "the criteria determining that First Health would not cover this transplant" (Docket #27 at FH 000183), First Health sent Mr. Neal, not "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to [Mr. Neal's] medical

4

circumstances," 29 C.F.R. § 2560.503-1(g)(1)(v)(B), but a copy of its general "Liver Transplantation Policy," without any explanation of how the terms of the Plan applied to Mr. Neal's medical circumstances. (Id. at FH 000184-194.) Finally, even if subsection (g)(1)(v)(B) were applicable instead of subsection (g)(1)(v)(A), First Health still failed to comply. While the Review Notification states that "[t]he clinical rationale used in making this decision is available in writing upon request" (0179), it does not state that the clinical rationale will be provided "free of charge," as subsection (g)(1)(v)(B) requires it to state.

Defendants contend that even if they did not meet all ERISA's procedural requirements, they substantially complied. Citing Hackett v. Xerox Corp. Long Term Disability Income Plan, 315 F.3d 771 (7th Cir. 2003), Defendants claim that the Seventh Circuit continues to apply the substantial compliance doctrine. However, Hackett involved a termination of disability benefits that occurred in early 1999. Id. at 773. The Department of Labor has since changed the relevant regulations, such that Hackett is no longer good law on this point:

> In November 2000,[3] the Department of Labor (Department) amended the procedural requirements for plans providing disability benefits. 65 Fed. Reg. 70246 (Nov. 21, 2000). . . . In addition, the Department eliminated the "deemed denied" provisions of the prior regulation and instead provided that "if a plan fails to provide processes that meet the regulatory minimum standards, the claimant is deemed to have exhausted the available administrative remedies and is free to pursue the remedies available under section 502(a) of the Act." 65 Fed. Reg. at 70255.
>
> The . . . substantial compliance doctrine is not applicable under the revised regulations. In waiving the administrative exhaustion requirement for plans that fail to comply with the procedural requirements, the Department noted that "[m]any commenters . . . argued that [29 C.F.R. § 2560.503-1(l)] would impose unnecessarily harsh consequences on plans that substantially fulfill the requirements of the regulation, but fall short in minor respects." Id. Notwithstanding these comments, the Department rejected two proposals that would excuse minor violations and impose some form of a substantial compliance standard. Id. at 70255-56 (rejecting a proposed good faith or actual prejudice standard). The Department concluded that:
>
>> Inasmuch as the regulation makes substantial revisions in the severity of the standards imposed on plans, we believe that plans should be held to the

---

[3] The new regulation applies to claims filed on or after January 1, 2002. 65 Fed. Reg. 70246. This would include Mr. Neal's claims, which were filed in March 2006 or later.

> articulated standards as representing the minimum procedural regularity that warrants imposing an exhaustion requirement on claimants. In the view of the Department, the standards of the regulation represent essential aspects of the process to which a claimant should be entitled under section 503 of the Act. A plan's failure to provide procedures consistent with these standards would effectively deny a claimant access to the administrative review process mandated by the Act.
>
> Id. at 70256. Thus, the Department rejected the notion of "substantial compliance" and concluded that "a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference." Id. at 70255.

Reeves v. Unum Life Ins. Co. of America, 376 F. Supp. 2d 1285, 1293-1294 (W.D. Okla. 2005).

Defendants argue that Mr. Neal cannot show that he suffered prejudice from their procedural errors. If prejudice were the standard, then neither could Defendants show that they suffered prejudice from Mr. Neal's late appeal. What Defendants want is for their self-imposed appeal deadlines to apply strictly to Mr. Neal, the less sophisticated party, while the requirements imposed by ERISA and its implementing regulations apply less than strictly to Defendants. But the Department of Labor has leveled the playing field. Under the current regulations, a defendant who wants to rely on an exhaustion-of-administrative-remedies defense must strictly comply with ERISA's procedures itself. Reeves, 376 F. Supp. 2d at 1293-1294; see also 29 C.F.R. § 2560.503-1(a)(-(b) (stating that § 2560.503-1 "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits" and that "[t]he claims procedures for a plan will be deemed to be reasonable only if" they comply with the regulation's terms); Linder v. BYK-Chemie USA Inc., 313 F. Supp. 2d 88, 94 (D. Conn. 2004) ("[T]he regulation is unequivocal that any failure to adhere to a proper claims procedure is sufficient to deem administrative remedies exhausted.") (emphasis added). Defendants failed to do so, and have waived their exhaustion defenses as a result.

Even if prejudice were the standard, Defendants cannot say that Mr. Neal did not suffer prejudice as a result of their procedural errors. Defendants claim that First Health apprised UW

6

that the six-month rule was the basis for denial by telephone in March or April 2006. However, conversations between Defendants and UW in March or April 2006 did nothing to provide Mr. Neal himself with the information he needed to file an appeal when he got home from the hospital. Precisely to avoid later disputes about who said what to whom when, ERISA requires every plan to "provide adequate notice <u>in writing</u> to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1) (emphasis added). When an ERISA plan first notifies a participant orally of an adverse benefit determination, "a written or electronic notification in accordance with paragraph (g)(1) of this section [must be] furnished to the claimant not later than 3 days after the oral notification." 29 C.F.R. § 2560.503-1(g)(2). Defendants failed to do that.

Defendants claim that Mr. Neal must have known by the spring of 2007, at the latest, the reason his claims had been denied. After first refusing to provide information over the phone, First Health did finally explain why it refused to cover the transplant in a letter dated May 16, 2007.[4] (Docket #27 at FH 000183-194.) If Defendants' actions in the spring of 2007 were adequate to bring them into compliance with ERISA's procedural requirements, however, then Mr. Neal's appeal was also timely. First Health received Mr. Neal's appeal on September 26, 2007, which was approximately four months after Mr. Neal would have received a copy of First Health's "Liver Transplantation Policy." (0306.)

First Health's explanation for why it denied Mr. Neal's claims for posttransplantation services remained confusing to the Neals even in 2007. First Health stated in its Review

---

[4] Along with a brief explanation, First Health included a copy of its "Liver Transplantation Policy." However, First Health omitted from that policy the key page—the page that listed, "No smoking, drugs or alcohol for at least 6 months prior to transplant" as an "Additional Indication[]" for an adult liver transplant. (<u>Compare</u> <u>id.</u> <u>with</u> CB 000118-122.)

Notifications that the services were "not medically necessary." (E.g., 0193.) But the real reason that First Health denied coverage for these claims was not that the services themselves were not medically necessary—even by First Health's peculiar definition of "medically necessary"—but that the Plan contained a separate exclusion for "[c]omplications arising from any non-covered surgery or treatment" that applies "regardless of medical necessity." (0051.) The Neals' frustration and inability to understand the reason for denial of these claims can be glimpsed in Mrs. Neal's March 9, 2007, letter to First Health:

> Enclosed is a copy of your EOB for the claim submitted for payment of a bill from Midstate Medical Express in the amount of $647.00.
>
> Your explanation for denial "Benefits denied because the plan provides benefits only for covered services and supplies that are medically necessary as defined by your plan" really tells me **nothing. Please explain this, exactly what are you referring to!**
>
> My husband, Ralph Neal, was transported from Madison, WI to Green Bay, WI flat on his back on a gurney, as he was not able to sit. This was the result of a major fall he had on May 7th, 2006. He was released from the hospital to go to rehab and if you claim this is not medically necessary was he to stay in the parking ramp until he was well enough to sit for over two hours for the drive back to Green Bay?
>
> I THINK THIS CLAIM MUST BE SENT BACK FOR RECONSIDERATION. We are therefore submitting this **appeal**. Please handle this as soon as possible as you can see this is getting "old"

(Docket #27 at FH 000195; emphasis in original.)

Because of Defendants' procedural errors, they have waived any defense based on Mr. .Neal's failure to exhaust his administrative remedies in a timely manner. Additionally, the Court should review Mr. Neal's claims for benefits de novo. Reeves, 376 F. Supp. 2d at 1293-1294; see also Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 222-223 (holding that plaintiff was entitled to "full and fair review" of his claims in the district court, reversing district court's determination that plan administrator was entitled to remand, and remanding case to district court with instructions for that court to decide claims "in the first instance"). Under that standard, Defendants bear the burden of proving that they properly denied Mr. Neal's claims. Santaella v.

Metropolitan Life Ins. Co., 123 F.3d 456, 461 (7th Cir. 1997).  Any ambiguity in the Plan's definition of "medically necessary" and "investigational/experimental" must be construed against Defendants.  Phillips v. Lincoln Nat. Life Ins. Co., 978 F.2d 302, 308 (7th Cir. 1992). Even if the Court were to apply deferential review, it should conduct that review mindful of the fact that Christopher & Banks both administers and funds the Plan, and that the circumstances of this denial (Docket #32 at 3-4) render it highly suspect.  Metropolitan Life Ins. Co. v. Glenn, ___ U.S. ___, 128 S. Ct. 2343, 2350, 171 L. Ed. 2d 299 (2008).  Because Defendants' own medical literature rejects First Health's "arbitrary" (0129) six-month rule, and because Defendants' interpretation of the words "medically necessary" makes no sense, Mr. Neal should prevail on the merits under either standard.  (Docket #23 at 12-17; Docket #32 at 5-8.)

Defendants contend that Dr. David K. Imagawa, who reviewed portions of the file on February 22, 2008, was an "independent expert" who "considered whether deviation from the six-month guideline would be appropriate in light of" Defendants' medical literature.  (Docket #28 at 18.)  But the circumstances of Dr. Imagawa's review suggest that he was providing a post hoc rationalization for First Health's actions, rather than his independent medical judgment.  By the time Dr. Imagawa performed his review, he had strong evidence that Dr. D'Alessandro's March 21, 2006, assessment of Mr. Neal as a good transplant candidate (0150-151) was accurate. According to Defendants' own medical literature, "[r]elapse rates are highest during the initial 6 months after the transplant and decline after this period. . . . About 95 percent of all relapses occur in the first 2 years after" transplantation.  (0131.)  But Dr. Imagawa had evidence that two years out, Mr. Neal was "doing well and according to the notes was abstinent."  (0124.)  That Dr. Imagawa turned a blind eye to that evidence, notwithstanding its significance according to his

own article, suggests that he was simply trying to provide a post hoc rationalization for First Health's use of an arbitrary, absolute six-month rule.

Defendants claim that even if an absolute requirement of six months' pretransplantation abstinence were unwarranted, Mr. Neal should at least have had to show a "few months of sobriety as a test of short term compliance." (0131.) He did. Mr. Neal had been abstinent for six weeks as of March 10, 2006. (0150.) The transplant occurred on April 7, 2006. (0154.) Even assuming that "sobriety" means teetotaling, as opposed to merely temperance or non-drunkenness,[5] Mr. Neal thus had approximately ten weeks (or two and one-half months) of pretransplantation abstinence, not the six weeks that Defendants repeatedly claim.

## CONCLUSION

Under any standard of review, Defendants' denial of Mr. Neal's claims was wrong. Defendants' motion for summary judgment should be denied, and Mr. Neal's granted.

Dated this 6th day of March, 2009.

LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.
Attorneys for Plaintiff Ralph C. Neal

By:   s/ T. Wickham Schmidt
        George Burnett
        State Bar No.: 1005964
        T. Wickham Schmidt
        State Bar No.: 1062002

**POST OFFICE ADDRESS**
231 South Adams Street
P. O. Box 23200
Green Bay, WI 54305-3200
Telephone: (920) 437-0476
Fax: (920) 437-2868
tws@lcojlaw.com
*#485433*

---

[5] Cf. Merriam-Webster's Online Dictionary, available at http://www.merriam-webster.com/dictionary/sober (defining "sober" as "**a** : sparing in the use of food or drink; ABSTEMIOUS **b** : not addicted to intoxicating drink **c** : not drunk.").